John Henry **HOLMES**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–16954.

Court of Criminal Appeals of Oklahoma.

Sept. 27, 1972.

William J. Otjen, Jr., Enid, for appellant.

Larry Derryberry, Atty. Gen., Paul Crowe, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant, John Henry Holmes, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Garfield County, Oklahoma, for the offense of Robbery in the First Degree; his punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

Because of the conclusion reached, we do not deem it necessary to recite the detailed statement of facts. Ralph Davis, who is almost totally blind and partially deaf, testified that somewhere around the 23rd day of November 1970 he was robbed by the defendant and a "colored" woman. He testified that he had his wallet containing 298 Twenty Dollar bills pinned to his trousers. They tore his wallet out of his pants and ran. He knew the defendant by the sound of his voice by virtue of prior experiences with him. After the robbery, he went to the front porch to try to summon help, fell, and hurt himself, and remained there until police officers arrived.

Officer McDaniel testified that he went to Mr. Davis' residence and found him lying on the front porch. Mr. Davis stated that he had been robbed by the defendant.

Testimony of Geraldine Wilson which was given at the preliminary hearing was read to the jury over the objection of the defendant. She testified that she went with the defendant to Davis' house, and after the defendant tried to hurt Davis, she ran.

Officer Sparks testified that he advised the defendant of his constitutional rights, and the defendant admitted being in Mr. Davis' house that morning, but denied robbing him. He accompanied the officers back to Davis' house and showed them the victim's billfold on the bed. The billfold contained One Thousand Two Hundred and Sixty-One Dollars ($1,261.00).

Several witnesses testified that the defendant changed Twenty Dollar bills into bills of larger denominations and paid two accounts, using Twenty Dollar bills.

For the defense, Verda Kamp testified that she loaned the defendant One Thousand One Hundred Dollars ($1,100.00), and that it was mostly in Twenty Dollar bills.

The defendant testified that he went to Davis' house on the morning in question and observed that his trousers had been ripped from the waist down to Davis' knees. Davis complained that his back was hurting and defendant asked him if he wanted him to take him to the hospital. Davis seemed upset and told the defendant to leave. After leaving Davis' house, he borrowed the money from Mrs. Kamp and paid some of his bills with the money he borrowed. He denied that Geraldine Wilson was with him when he went to the Davis house.

Rachel Mosher testified that she lived across the street from Mr. Davis. She testified that on the morning in question she saw the defendant at Mr. Davis' house and that he was alone.

Defendant's third proposition asserts that the trial court erred in admitting the testimony of Geraldine Wilson by transcript. This proposition is well taken.

The record reflects that the following transpired at the trial.

"BY THE COURT: Now you say that the condition of this witness is such that she is not available, that is the witness Geraldiné Harrison Wilson.

"MR. SMITH: Your Honor, on two cases attempts have been made to serve Geraldine Wilson with a subpoena and it is my understanding that two different Deputies on two different occasions have tried to serve Geraldine Wilson. The first subpoena was sent out probably three or four weeks ago when the trial was scheduled for last week; but then it was snowed out, and the next subpoena was issued right after that.

"BY THE COURT: One subpoena shows a return of February 17, 1971 by Deputy William Henderson and that is the first one.

"MR. SMITH: I might add that Mr. Holmes was present with his attorney during the preliminary when she testified and he did have an opportunity to Cross Examine that witness, which was done.

"MR. OTJEN: I will object to the reading of Miss Wilson's testimony. First, Your Honor, the Court is fully aware that the preliminary hearing is not a trial at all and secondly, I was not present to Cross Examine her and third, she is not here for a continuance which he can do, but then he should have had an Affidavit on file as to why she is not here.

"MR. SMITH: I am prepared to offer testimony on that.

"BY THE COURT: I noticed from Deputy Harding, from his return, that Geraldine Wilson was served and that she did appear at the preliminary hearing.

"MR. SMITH: Yes, sir.

"MR. OTJEN: I would also like to call to the attention of the Court that accord-ing to the records Miss Wilson was committed in October of 1969 to Fort Supply and that she left the hospital without authorization and she was not released and not discharged and therefore, not competent under those circumstances, and she has been declared incompetent, in addition to that, obviously, by not having been discharged from the hospital, and therefore, she is incompetent to testify.

"MR. SMITH: She has never been declared incompetent. I have looked at the Court file and it does not declare her incompetent, and when you voluntarily admit yourself, you are not declared incompetent.

"BY THE COURT: Was this subject raised at the preliminary as to her competency?

"MR. SMITH: There were no objections made.

"MR. OTJEN: The issue was raised by Mr. Stormont at the preliminary when he appeared for the defendant. She was asked about having been in Fort Supply.

"MR. SMITH: But no objections were made as to her competency.

"MR. OTJEN: But I am making it now.

"BY THE COURT: Very well. I will resolve your question to the best of my available means. Geraldine Wilson is shown not available by the Sheriff's return. She was available at the time of the preliminary hearing and she was questioned and Cross Examined at that time and therefore, I'm going to allow you to read the testimony from the transcript as taken by the Court Reporter at that time, and you certainly are entitled to exceptions to the ruling, Mr. Otjen. Now let us take a little recess and then get started." (Tr. 46–48)

Dealing with a similar question in In re Bishop, Okl.Cr., 443 P.2d 768, we stated:

"We are of the opinion, however, that the Honorable United States Supreme Court decision [1] does not preclude the

---

1.  Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255.

use of such preliminary hearing testimony, in proper circumstances. The transcript of testimony recorded at the preliminary hearing may be read at the accused's trial when those circumstances exist. But in that instance, the State is required to show that a diligent effort has been made to locate the missing witness, *and that he is actually unavailable.* The Supreme Court said in reference to this question:

'* * * [T]here may be some justification for holding that the opportunity for cross-examination of testimony at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable. * * *' (Emphasis Added)

"This Court provided in Newton v. State, Okl.Cr., 403 P.2d 913 (1965), that the admission of previous testimony of a missing witness is at the discretion of the trial judge. However, exercise of that discretion is subject to certain limitations. Those limitations include: that the testimony was taken down by a reporter in the presence of the defendant and his counsel, who cross-examined him; that the testimony was filed with the clerk; that a proper predicate is laid for the introduction of such testimony, *by showing the exercise of due diligence in attempting to locate the missing witness*; and, *that due diligence has been exercised in an effort to produce the witness, by timely issuance and service of subpoena.* In the absence of such showing, the transcript of previous testimony should be denied by the trial court. See also: Fletcher v. State, Okl.Cr., 364 P.2d 713; Morrison et al. v. State, 59 Okl.Cr. 245, 57 P.2d 882." (Emphasis Added)

In the instant case, the record of this Court reflects that a subpoena was issued on February 17, 1971 for the witness Geraldine Wilson to appear in court on February 24, 1971, and was returned "Not found." A subsequent subpoena was issued for the witness on March 1, 1971 to appear on March 3, 1971 and was again returned "Not found." At the trial, although the Assistant District Attorney stated that he was prepared to offer testimony as to the unavailability of the witness, no testimony was offered. We are of the opinion that the showing of due diligence to prove the unavailability of a witness requires more from the State than the mere issuance of a subpoena and the return of "Not found." Testimony should have been offered as to what efforts, if any, were made to serve the subpoena and the ultimate fact that the witness was unavailable to testify. Because of the somewhat confused testimony of the victim Davis, the testimony of Geraldine Wilson was vital to the State's case. Consequently, under these facts and circumstances, we must hold that the State has not shown due diligence in securing the presence of this witness.

We, therefore, conclude that the trial court erred in permitting the reading of the transcript of testimony into the record. This cause is accordingly reversed and remanded.

BRETT and SIMMS, JJ., concur.