**Hunter Odell ROSE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. A–17902.**

Court of Criminal Appeals of Oklahoma.

April 27, 1973.

Rehearing Denied May 23, 1973.

Ed Dudley, Durant, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Daniel J. Gamino, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Hunter Odell Rose, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Bryan County, Case No. CRF–71–130, for the crime of Larceny of a Motor Vehicle, After Former Conviction of a Felony. He was sentenced to serve a term of ten (10) years in the State Penitentiary in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

At the trial, Jack W. Kerr, lease truck operator, Seminole, Oklahoma, testified that on May 24, 1971, in Louisville, Kentucky, he loaded a D–9 Caterpillar tractor onto his 1970 Peterbilt truck and Lo-Boy trailer. Kerr drove to Dallas, Texas, and arrived around 8:30 p. m., May 25, 1971. He rented a room in the Anchor Motel, ate supper, locked his truck and went to bed. He awoke around 6:00 a. m., May 26, 1971, and discovered that his truck, trailer and the D–9 Caterpillar tractor had been stolen. Kerr immediately notified Dallas law enforcement authorities. Kerr was contacted June 30, 1971, and told his truck had been recovered in Durant, Oklahoma. Kerr went to Oklahoma City and identified the cab, doors, winch and fuel tanks from his truck.

The preliminary hearing testimony of Wayne Lamar Bruce, Dallas, Texas, was read into the record. Bruce admitted that he had participated in the theft of a 1970 Peterbilt truck and trailer and D–9 Caterpillar in the early hours of May 26, 1971. Bruce testified that the defendant and Charles Philpot came to his apartment around 9:00 p. m., May 25, 1971. He said they all went to the 77-Cafe across the street from the Anchor Motel. Bruce testified that around 2:45 a. m., May 26, 1971, he and defendant approached the truck. Defendant used a screwdriver to pry open the vent window and then reached in and unlocked the cab door. Bruce drove the truck and defendant sat in the cab to give Bruce directions. Following defendant's instructions, Bruce drove to the Farris farm near Durant, Oklahoma, and drove the truck and trailer into the Farris' barn. Later in the morning Mrs. Farris gave defendant a $500.00 down payment on the D–9 Caterpillar. Bruce testified he returned to Dallas in defendant's Maverick automobile. He said that three weeks later defendant met him at the 77-Cafe in Dallas and gave him $333.65.

Woodie Dean Farris, Bennington, Oklahoma, testified that she spent the night of May 25, 1971, with her neighbor, Jane Kemp. Mrs. Farris testified that she received a call that night from defendant or Charles Philpot. As a result of that call the morning of May 26, 1971, she went to her house and met defendant and Wayne Bruce. She unlocked the gate and allowed them to park the truck and caterpillar tractor in her barn. Defendant, Bruce and Philpot then went into her house for cof-

fee, then they all went to Jane Kemp's house. Mrs. Farris testified she then went to the Post Office and cashed a check for around $500.00 and gave the money to the defendant. A few days later defendant again came to her home and Mrs. Farris paid him $1,000.00. She testified that she later pled guilty to the charge of concealing stolen property.

Jane Kemp, Bennington, Oklahoma, testified that Mrs. Farris spent the night of May 25th at her home and Mrs. Farris received a telephone call around midnight. Mrs. Kemp testified that Mrs. Farris left around 6:00 a. m., May 26, 1971, and returned later with defendant, Bruce and Philpot. They stayed in Mrs. Kemp's living room about an hour and a half and then left. Mrs. Kemp testified that she was at the Farris farm a week or ten days later and saw the D-9 Caterpillar and the Peterbilt truck and trailer. Mrs. Kemp testified that she later pled guilty to concealing stolen property.

Paul Wade, investigator, Texas Southwestern Cattlemen's Association, testified that June 28, 1971, he set up the surveillance of the road approaching the Farris ranch. He observed a large truck and several other vehicles enter the ranch. He testified that June 29, 1971, he flew over the Farris ranch and observed the D-9 yellow Caterpillar and large truck parts being loaded into another large vehicle. The evening of June 29, 1971, Wade and several other law enforcement officers set up another surveillance of the road approaching the Farris farm. Around 3:00 a. m., June 30, 1971, a large truck, a van and a yellow Maverick came out of the Farris farm. Wade and other officers moved in and arrested defendant, who was driving his Maverick, and the drivers of the other vehicles. In the van, officers found the front end, motor, transmission and other parts of the 1970 Peterbilt truck.

B. G. Jones, Oklahoma State Bureau of Investigation and Roscoe Hatfield, Special Agent, F.B.I., both testified that they assisted Wade in the surveillance and arrest of defendant and his companions.

For the defense, Zoe Mock, of Boswell, testified that on May 25 and 26, 1971, she was the defendant's girlfriend and was with him in Branch's Tavern, Bokchito, Oklahoma.

Clyde Pooler, inmate, Oklahoma State Penitentiary, testified that Bruce admitted he lied at his preliminary hearing testimony to implicate Rose.

██ Defendant's first proposition asserts that the "court erred in finding there to be sufficient corroboration of the testimony of a self-confessed accomplice." The defendant argues that the reasons for corroboration stated by the court are insufficient because at most they connect the defendant with a confessed principal but in no way connect defendant with the commission of the crime. Defendant cites 22 O.S.1971, § 742 as authority:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

We cannot agree with defendant's assertion. There is no evidence that the witnesses Farris and Kemp were accomplices (see Frew v. State, Okl.Cr., 503 P.2d 900 [1972]). Accomplice's testimony as to the asportation was sufficiently corroborated by Farris and Kemp. Farris testified that she saw defendant in the truck with the accomplice when she opened the gate to allow them to put the truck and D-9 Caterpillar in her barn. In Richardson v. State, Okl.Cr., 491 P.2d 364 (1971), we cited with approval the case of Nation v. State, Okl. Cr., 478 P.2d 974 (1970) wherein we stated:

"It is the law in this state that an accomplice's testimony need not be corroborated as to every material point. If the accomplice is corroborated as to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime, the

jury may from that infer that he speaks the truth as to all."

Since the accomplice's testimony was corroborated by independent evidence and said evidence meets the requirements of 22 O.S.1971, § 742, we find this proposition to be without merit.

■ Defendant next asserts that the court erred in admitting the preliminary hearing testimony of the State's chief witness, who was absent at the trial, since the State did not use due diligence in locating said witness. In support of this contention, defendant cites Holmes v. State, Okl. Cr., 501 P.2d 830 (1972) wherein we cited In re Bishop, Okl.Cr., 443 P.2d 768 (1969):

"This Court provided in Newton v. State, Okl.Cr., 403 P.2d 913 (1965), that the admission of previous testimony of a missing witness is at the discretion of the trial judge. However, exercise of that discretion is subject to certain limitations. Those limitations include: that the testimony was taken down by a reporter in the presence of the defendant and his counsel, who cross-examined him; that the testimony was filed with the clerk; that a proper predicate is laid for the introduction of such testimony, *by showing the exercise of due diligence in attempting to locate the missing witness; and, that due diligence has been exercised in an effort to produce the witness, by timely issuance and service of subpoena.* In the absence of such showing, the transcript of previous testimony should be denied by the trial court. See also: Fletcher v. State, Okl.Cr., 364 P.2d 713; Morrison et al. v. State, 59 Okl.Cr. 245, 57 P.2d 882. (Emphasis Added)"

We do not dispute the law as announced in the *Holmes* case. In the instant case the record discloses that the State made a diligent effort to locate and produce their chief witness in person at trial. Under such circumstances we cannot say that the trial judge abused his discretion in allowing the preliminary hearing testimony of the witness to be introduced at trial or that defendant was denied his constitutional right to confront the witnesses against him.

■ Defendant's third proposition asserts that he was denied his right to a speedy trial and that it was error for the court not to dismiss the charges against him. The right to speedy trial is fundamental and is imposed by the Due Process Clause of the Fourteenth Amendment on the States. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In setting out the criteria by which the speedy trial right is to be judged, the United States Supreme Court stated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):

"[T]he approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

\* \* \* \* \* \*

"A balancing test necessarily compels courts to approach speedy-trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

In discussing the responsibility of a defendant to assert his right of speedy trial the Supreme Court said:

". . . [I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine . . ."

Oklahoma decisions have adhered to the principle, which conforms to that espoused by the Supreme Court, that a defendant, prosecuted for a public offense, whose trial has been postponed upon his own conduct is not in position to urge dismissal for delay. See Lewis v. Mattingly, Okl.Cr., 416 P.2d 632 (1966) and Hampton v. State of Oklahoma, 10 Cir., 368 F.2d 9 (1966).

■ In the instant case, defendant was arrested in June 1971 and charged in September 1971. Trial was set for December 1971, but defendant failed to appear. A bench warrant was issued for defendant and he was subsequently incarcerated in county jail in February 1972. Defendant's second trial was set for the beginning of June 1972 and at that date prosecution was granted a continuance until August 1972. Defendant was convicted at the August 1972 trial. Under such circumstances it is clear that defendant contributed to the delay of his trial. Hence, we are of the opinion that defendant is not in position to urge dismissal for delay.

■ The fourth proposition of defendant asserts that the court erred in admitting irrelevant and immaterial evidence as a result of which defendant was unduly prejudiced. Defendant argues that the jury was influenced when the court admitted photographs of the dismantled truck and that defendant was prejudiced by allowing witnesses to testify as to the circumstances during and following the arrest of defendant. A well settled rule of Oklahoma law is stated in the case of Hopkins v. State, Okl.Cr., 506 P.2d 580 (1973):

> "It is within the discretion of the trial court to rule on the admissibility of evidence at trial and without a showing of severe prejudice to the defendant or breach of his fundamental rights, this Court will not reverse on such grounds. Mott v. State, 94 Okl.Cr. 145, 232 P.2d 166 (1951); Jackson v. State, 67 Okl.Cr. 422, 94 P.2d 851 (1932)."

The evidence complained of has probative value with respect to facts in issue, which outweighs the dangers of prejudice to the defendant. The evidence, although circumstantial, tends to connect defendant with the taking and carrying away of the motor vehicle and tends to show that defendant intended to permanently deprive the owner of such property. Hence, the discretion of the trial court was not abused and this proposition is without merit.

■ Defendant lastly contends that the sentence imposed was excessive. Noting the fact that defendant had been convicted of a prior felony and that the court imposed a penalty well within the provision of 21 O.S.1971, § 1720, we cannot say that the punishment was excessive. See Shook v. State, Okl.Cr., 483 P.2d 748 (1971); Shipman v. State, Okl.Cr., 483 P.2d 761 (1971).

In conclusion we observe that the record is free of any error which would justify modification or reversal and under such circumstances we are of the opinion that the judgment and sentence appealed from should be affirmed.

BLISS, P. J., and BUSSEY, J., concurs.