**Eli MAGHE, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–42.**

Court of Criminal Appeals of Oklahoma.

June 28, 1974.

Kenneth Butler, Okmulgee, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., John Wilkinson, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Eli Maghe, Jr., hereinafter referred to as defendant, was charged, tried and convicted for the offense of Obtaining Money by False Pretenses in the District Court, Okmulgee County, Case No. CRF–72–125. He received a sentence of two (2) years imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

The charge on which defendant was convicted arose from a series of dealings he had with Mr. H. K. Greer, President of the Morris State Bank, Morris, Oklahoma. The first of these transactions occurred in September, 1970, when Mr. Greer made a loan to defendant to be paid in monthly installments. The purpose of the loan was to enable defendant to purchase ten cattle and one Charlois bull. The amount of the loan was approximately $950.00. In late November, 1970, defendant approached Mr. Greer about obtaining a second loan in order to buy 30 additional black, white-faced cattle. Mr. Greer agreed to finance the additional purchase, but defendant told him he would prefer to wait until he had located the cattle before closing the loan. In December, 1970, defendant reported that he had located the cattle, and would be back to close the loan when he had transported them to some specified acreage near Okmulgee. On December 31, 1970, defendant returned and told Mr. Greer that the cattle were in place and he was ready to close the loan. A promissory note and security agreement in the amount of $3,250.00 were executed, and the money was deposited in defendant's bank account. Security for the loan was described on the documents as 40 head of cattle and one bull, located on the Northeast Quarter 27/14/11, Okmulgee County. On January 4, 1971, defendant came into the bank and wrote out a personal check in the amount of $3,250.00 to Rocky D. Scrimshire, who had accompanied him into the bank. In the lower left-hand corner of the check, defendant wrote, "payment in full for thirty (30) head of b-w cattle."

Scrimshire testified for the State that defendant, a classmate at Okmulgee State Tech, had approached him at school asking for a favor. He told Scrimshire that he had made a deal to purchase cattle at a smaller price then he had told his wife he was to pay. He wished to conceal this fact from his wife and pocket the difference. He asked Scrimshire to accompany him to the bank, accept payment for the

full amount, and return the $3,250.00 cash to him after they had left the bank. Scrimshire did as the defendant requested. Defendant did not tell Scrimshire, nor did Scrimshire suspect, that this transaction was part of a scheme to defraud the bank.

The first time the bank officials suspected that something was amiss was in May, 1971, when defendant defaulted on one of the installment payments from the first loan. On May 25, 1971, the bank filed a replevin action for the ten cattle and one bull. Apparently, the true owners of these cattle (the ten cattle and one bull involved in the first loan) were defendant's parents, who recovered a $5,000.00 judgment against the bank for the wrongful replevin.

Mr. Greer went to the acreage listed on the promissory note, but was unable to locate the 30 cattle supposedly grazing there. He contacted Mr. Pine, from whom the defendant was allegedly leasing the acreage, and Pine denied having leased the land to defendant. Mr. Greer made numerous unsuccessful attempts to reach defendant by phone, and his attorney made numerous trips in search of the 30 cattle. Finally, criminal charges were filed in September, 1972, 15 months after the second loan was made. Thereafter, defendant was incarcerated in a Federal penitentiary on an unrelated conviction. He was returned to Okmulgee via Writ of Habeas Corpus ad Prosequendum on May 11, 1973, for preliminary hearing on the instant charge, after which he was returned to Federal custody. There he remained until he was returned for trial on October 25, 1973, again by Writ of Habeas Corpus filed by the District Attorney.

Defendant's only witness was his father, Eli Maghe, Sr., who testified that he had seen a few cattle around their house, and his son had told him he had bought them in January with money loaned him by the Morris State Bank. He also testified that his son owned about 20 acres of land near Morris.

Both of defendant's assignments of error allege that he was denied the right to a speedy trial. He argues that his Motion to Dismiss on that basis was erroneously overruled by the trial court.

■ His first assignment of error concerns the 13 month period from the time he was charged (September, 1972), and the time he was tried (October 25, 1973). As defendant admits, the record is totally silent as to whether defendant ever asserted his right to a speedy trial on the state charge during this period of time, nor is there any showing by the State as to why the delay occurred. More importantly, in our view, there is no showing, or claim, by defendant that he was prejudiced in any way by the delay.

In dealing with defendant's claim, we are governed by the four-part "balancing" test set forth by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), discussed in Rose v. State, Okl.Cr., 509 P. 2d 1368 (1973). The Court listed four factors which, when considered along with "such other circumstances as may be relevant," could be relied upon in determining whether a defendant has been denied a speedy trial. The four factors were: 1) the length of the delay; 2) the reason assigned by the government for the delay; 3) defendant's assertion of the right; and 4) extent, if any, of prejudice to the defendant. We feel that defendant has failed to qualify for relief under these criteria for several reasons. First, in requesting Writs of Habeas Corpus ad Prosequendum to obtain temporary custody of defendant for preliminary hearing and trial, the State complied with the requirements set forth in the Second Paragraph of the Syllabus in Naugle v. Freeman, Okl.Cr., 450 P.2d 904 (1969), which reads as follows:

"Where accused is in a federal prison, the right to a speedy trial contemplates that district attorney make a diligent, good faith effort to bring accused within Oklahoma court's jurisdiction to answer Oklahoma charges though some expense to the State may be involved in bringing

accused into the State and returning him to federal custody."

Second, the extent of the delay in the proceedings was less than the 13 months alleged by defendant, as he was returned for preliminary hearing in May, 1973, approximately eight months from the filing of the charge.

Third, the record is silent as to the reason cited by the government for the delay, and we cannot presume error from a silent record.

Fourth, and most important, defendant has failed to allege any prejudice from the delay. Thus, an application of the balancing test prescribed by *Barker*, leads us to conclude that the 13 month delay between the filing of the charge and trial did not constitute a denial of defendant's right to a speedy trial. Accordingly, we find this assignment of error to be without merit.

In his second assignment of error, defendant argues that his right to a speedy trial was denied because of the 18 month period between the "offense," (i. e., the closing of the loan on December 31, 1970), and the filing of the charge in September, 1972. In Kovash v. State, Okl.Cr., 519 P. 2d 517 (1974), we stated:

". . . In United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the United States Supreme Court, in ruling that a time period of three years between the commission of a crime and the filing of the indictment was not violative of due process, stated:

'On its face, the protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution . . . .' "

Thus, during the time lapse between the offense and the filing of charges, defendant was not an "accused" within the meaning expressed above, and his right to a speedy trial had not yet attached. His assertion of its denial herein is, therefore,

unfounded, and this assignment of error is also without merit.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., and BRETT, J., concur.