James Ray RUSSELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–155.

Court of Criminal Appeals of Oklahoma.

Nov. 23, 1976.

Charles V. Foor, McAlester, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, James Ray Russell, hereinafter referred to as defendant, was charged in the District Court, Haskell County, Case No. CRF–72–16, for the offense of Murder, in violation of 21 O.S.1971, § 701. He was tried by a jury and convicted of Manslaughter in the First Degree, with his punishment being set at thirty-five (35) years. From this judgment and sentence he has appealed to this Court.

In March of 1972, Mr. Albert N. Chrisenberry was a resident of Keota, Oklahoma, ninety-two years of age and an invalid confined to a wheel chair. On March 25 of that year he was beaten and robbed while in his home. He was discovered in the evening by his housekeeper, Ms. Ethel Perry, who summoned aid. He later died, and Dr. Merlin D. Bellamy, a physician and pathologist, testified at the trial that Mr. Chrisenberry's death was a direct result of the beating.

The evidence at the trial was conflicting. Billy Ray Miller, Jr., a cousin of the defendant, testified that on the 24th of March, 1972, he was living in Amarillo, Texas, and that the defendant passed through there on his way from California to Oklahoma and asked Miller to ride to Oklahoma with him. Refreshing his memory from an earlier statement, Miller testified that the two of them went to Keota, Oklahoma. Miller went to the home of Noah Wayne Russell, a brother of the defendant, and accompanied him to a bar, where the defendant was talking with his ex-wife, Damarius Russell. After an evening of pool and beer, Miller spent the night with Noah Russell, but the defendant

did not. The next morning Miller and the defendant and Noah Russell met at a drive-in and the three of them drove around for a while in two cars. At one point Miller—again refreshing his memory from this earlier statement said he saw the defendant take a small caliber pistol from the trunk of his car. They all drove to a cemetery and the defendant and his brother Noah left Miller there for a time. When they returned defendant was no longer wearing the same shirt, and there were spots on his trousers which might have been blood. The defendant then drove Miller back to Amarillo at a high rate of speed, and during the trip he told Miller that he had whipped an old man and taken his money. On cross-examination Miller admitted that he had given a deposition prior to the trial in which he repudiated earlier testimony substantially similar to his testimony at this trial.

Noah Russell corroborated Miller's testimony and also testified as to the period during which Miller was left at the cemetery. He said that at this time the two brothers drove to the home of Mr. Christenberry, that the defendant went into the house and then came back out with dark stains on his trousers. He gave Noah Russell $40.00 and asked him to get rid of a sack containing the defendant's gold shirt, a billfold and two coin purses. Noah tried to burn the things and then buried them. Noah Russell's testimony also revealed that he was currently in prison in Arkansas for committing five robberies with a mode of operation similar to the instant case.

The defendant testified in his own behalf that he indeed picked up Billy Miller on his way from California to Oklahoma, that they had gone to Keota, and that they had spent the evening drinking beer and talking with his ex-wife; that his entire purpose for coming to Oklahoma was to talk with his ex-wife about the possibility of getting back together. He said that he spent the night with his ex-wife and then left early in the morning for California.

Damarius Russell's testimony supported the defendant's story. The defendant also testified that he left Billy Miller in Keota at Miller's own request. The first he knew of the crime was when he was arrested in California; and since he had nothing to hide he intended to sign extradition papers, but his brother Noah called him from Oklahoma and said that he could help Noah by fighting extradition. So he did. He testified that at one point Noah confessed to the crime to him, and said that he got $6,200.00.

■ The defendant's first assignment of error is that he was denied due process of law through the failure of the court reporter to report transactions which occurred without the presence of the jury, and that certain errors properly preserved at the trial are not contained in the record. This assignment is repeated in connection with the defendant's fifth assignment of error, which the defendant concedes is not supported by the record, and would presumably be raised with regard to the seventh and ninth assignments of error, since the record does not show that the defendant properly objected to them at the time of the trial. But the defendant is responsible for the record on appeal, and the deficiencies could have been cured with affidavits. Compare *Corliss v. State*, 12 Okl.Cr. 526, 159 P. 1015 (1916) where we made a similar ruling with regard to the omission from the transcript of the prosecutor's argument. And since the defendant has failed to properly support his allegations by supplementation of the record, we cannot review these assignments of error.

■ The defendant's second assignment of error is that the court would not allow the defendant to acquire a transcript of the preliminary hearing. He alleges that an oral motion for a transcript at State expense was granted at the time of the preliminary hearing, but there is nothing in the record to support that allegation. This Court has consistently held that it cannot review allegations of error when the matter under complaint is not con-

tained in the record. *Maghe v. State,* Okl.Cr., 429 P.2d 535 (1967) and while the record does show that the defendant did file a written motion for a transcript on May 27, 1975, the failure of the court to rule on this motion cannot be said to be error. It was incumbent upon the defendant as the movant to see that his motion was heard; the mere filing of a motion will not by itself guarantee a hearing. Failing to get the motion heard prior to trial, the defendant could have moved for a continuance while the transcript was prepared.

█ The defendant's third assignment of error is that the trial court committed error in overruling the defendant's motion to quash the information on the day of the trial without reviewing a transcript of the preliminary hearing. The State argues that we are without liberty to review this assignment of error on the grounds that the defendant failed to designate a transcript of the preliminary hearing as a part of the record on appeal. But our having such a transcript is immaterial here; the error assigned is that the trial court did not have one, and the record clearly shows that to be the case.

In *Whitman v. District Court of Oklahoma County,* Okl.Cr., 423 P.2d 740 (1967) we dealt with the question of testing the sufficiency of the evidence presented at the preliminary hearing. In that case we said:

"The proper procedure to quash an information for reason of the insufficiency of the evidence presented at the preliminary hearing should be brought under § 258, supra.; [i. e., 22 O.S.1971, § 258] wherein the testimony of the preliminary hearing is reported, transcribed, and *made a part* of said Motion to Quash when presented to the district judge." (Emphasis added)

The defendant has assigned as error the fact that the trial judge did not have a transcript of the preliminary hearing, but the fact is that it is the responsibility of the defendant to see that he had one.

█ The defendant's fourth assignment of error is that the trial court erroneously allowed a severance between the two defendants without good cause being shown and without notice to this defendant of the motion having been filed. The contention is that this constituted surprise, and that the defendant's case was prejudiced. The State argues that the defendant Noah Wayne Russell had a statutory right to a severance under 22 O.S.1961, § 838; however that statute was repealed in 1970, and had no effect at the time of this trial. The general rule is that a question of severance lies entirely within the sound discretion of the trial court, and unless there is a showing of prejudice this Court will not disturb the trial court's ruling. *Lemmon v. State,* Okl.Cr., 538 P.2d 596 (1975). The defendant here contends that there was prejudice, but fails to show anything that would tend to justify the court's invading the discretion of the trial court.

█ The defendant's sixth assignment of error is that the trial court allowed a witness who did not remember the events at issue to read from a two-year-old statement, is not supported by any citation of authority. We have repeatedly said that when this is the case, the Court will not search for authorities to support allegations of error in the trial court. When there are no citations of authority we will review an allegation only when the defendant has been deprived of fundamental rights on the face of the record. Such is not the case here.

█ And, finally the defendant's eighth assignment of error is that the trial court allowed the case to go to the jury on the uncorroborated testimony of a co-defendant. However this contention is plainly without merit, as the testimony of Billy Ray Miller, Jr. clearly linked the defendant to the crime independently of the testimony of the co-defendant. *Barber v. State,* Okl.Cr., 388 P.2d 320 (1964); *Nation v. State,* Okl.Cr., 478 P.2d 974 (1971); *Rose v. State,* Okl.Cr., 509 P.2d 1368 (1973).

For the foregoing reasons we find the defendant's appeal to be without merit, and it is therefore the opinion of this Court that the judgment and sentence in this case be *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.