**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 22, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ALFONZO L. VINEYARD,

    Petitioner - Appellant,

v.

CARRIE BRIDGES, Warden,

    Respondent - Appellee.

No. 25-5089
(D.C. No. 4:22-CV-00149-JFH-SH)
(N.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY***
_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.
_____

Alfonzo Vineyard, an Oklahoma prisoner proceeding *pro se*,[1] seeks a certificate of appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2254 application. *See* 28 U.S.C. § 2253(c)(1)(A). We deny a COA and dismiss this matter.

---

    * This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    [1] Because Vineyard appears *pro se*, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

I

In 2017, the State of Oklahoma charged Vineyard with multiple felonies: assault and battery with a deadly weapon, Okla. Stat. tit. 21, § 652(C); possession of a firearm after former conviction of a felony, *id.* § 1283; first-degree burglary, *id.* § 1431; and domestic assault and battery, second offense, *id.* § 644(C).[2] The state alleged that Vineyard burglarized the apartment of his girlfriend, Tiffany Alexander, and later shot her during an argument.

At a preliminary hearing, Alexander, her neighbor Dorshell Fletcher, and Fletcher's daughter, Y.F.,[3] testified about the two incidents. Relevant here, Alexander described an argument at her apartment during which Vineyard produced a handgun, pointed it at her, and told her she "was going to pay." R. II at 71. From the neighboring apartment, Y.F. testified that she heard Vineyard say he "was going to kill [Alexander]," and Alexander scream "she didn't want to die." R. II at 48, 56. Alexander then "pick[ed] up something" and "hit his hand." R. II at 71. The gun discharged, striking her under the arm.

Two months before trial, Vineyard orally asked the trial court to remove his appointed counsel so he could represent himself. Vineyard told the court

---

[2] Vineyard was also charged with two misdemeanor counts of obstructing an officer, Okla. Stat. tit. 21, § 540, which are not separately challenged in this appeal.

[3] Because Y.F. was a minor at the time of the hearing, we refer to her by her initials. *See* Fed. R. App. P. 25(a)(5); Fed. R. Crim. P. 49.1(a)(3).

that counsel did not "have [his] best interest at heart." R. II at 89. He explained that counsel had refused to seek dismissal of the charges based on two affidavits Alexander signed stating that she did "not wish to go through with the charges," R. III at 840–41, and had instead urged him to accept the State's plea offer. After advising Vineyard of the risks of self-representation, the trial court granted his request and instructed counsel to serve in an advisory capacity.

Vineyard proceeded to trial. On the first day, the State moved to declare Alexander, Fletcher, and Y.F. unavailable. The trial court granted the motion over Vineyard's objection, and the preliminary hearing transcripts were read to the jury. The jury convicted Vineyard on all counts, and the trial court sentenced him to consecutive life sentences.

On direct appeal, Vineyard's appellate counsel raised five claims: Vineyard's waiver of counsel was not knowing, intelligent, and voluntary; the admission of Alexander's preliminary hearing testimony violated the Confrontation Clause; the evidence was insufficient to support his conviction of assault and battery with a deadly weapon; the trial court erred in failing to instruct on the lesser-included offense of pointing a firearm; and cumulative errors deprived Vineyard of a fair trial. The Oklahoma Court of Criminal Appeals ("OCCA") affirmed in a summary opinion.

Vineyard then sought post-conviction relief in state court, raising nine claims of ineffective assistance of appellate counsel (IAAC) and one freestanding claim of prosecutorial misconduct. The state district court denied relief, holding the IAAC claims were meritless and the prosecutorial misconduct claim procedurally barred because it was not raised on direct appeal. Vineyard appealed the denial. He argued the prosecutorial misconduct claim was not barred because it had been raised as an IAAC claim. The OCCA rejected Vineyard's characterization and affirmed the denial of all ten claims.

Vineyard next filed a § 2254 habeas application in the United States District Court for the Northern District of Oklahoma, raising the five claims from his direct appeal and the ten IAAC claims. The district court denied the application and Vineyard's request for a COA. He now seeks a COA from this court on the same grounds.

## II

Vineyard must obtain a COA to appeal the denial of his habeas application. *See* 28 U.S.C. § 2253(c)(1)(A). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). What that showing requires depends on the basis for the district court's ruling.

For a claim denied on the merits, an applicant must show "that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the state court adjudicated the claim, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) adds another layer of deference. The AEDPA precludes federal habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). At the COA stage, we therefore ask whether reasonable jurists could debate the district court's application of AEDPA. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

For a claim denied on procedural grounds, Vineyard must make two showings. He must show that reasonable jurists would find it debatable that (1) "the petition states a valid claim of the denial of a constitutional right" and (2) "the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

## III

In support of his application for a COA, Vineyard raises the same fifteen issues presented to the district court. We first consider the five claims raised in his direct appeal and then turn to the ten IAAC claims. As we explain, the district court's resolution of each is not debatable or wrong.

**A**

On direct appeal, Vineyard argued he did not make a voluntary, knowing, or intelligent waiver of his right to counsel. In his view, the trial court's colloquy was constitutionally inadequate because he was not informed of the range of punishment, the allegations against him, possible defenses, or his right to testify. The OCCA rejected the claim, holding "[t]he record established that Vineyard was adequately advised of both general and specific dangers, disadvantages, and pitfalls of self-representation." R. I at 250.

In his § 2254 application, Vineyard argued the "[t]rial court failed to adequately explain the rights that he was waiving and information that was relevant to his ability to make such a waiver. [Vineyard] told judge about the breakdown in communication and of request to substitute counsel and [about his] grievance to [the Oklahoma Bar Association]." *Id.* at 8. The district court interpreted Vineyard as raising two arguments. First, that the trial court's *Faretta* advisements were inadequate. The court rejected this argument, holding the OCCA's application of *Faretta v. California*, 422 U.S. 806 (1975), to the waiver colloquy was not unreasonable. Second, the court construed the alleged communication breakdown and request for substitute counsel as presenting additional circumstances bearing on the validity of his waiver. The court determined that to the extent Vineyard raised such a claim, it was barred by anticipatory procedural default: Vineyard had not presented the claim in

6

state court, it would be procedurally barred if he attempted to do so now, and he offered no basis to excuse the default. Vineyard challenges both rulings in his COA application.

Reasonable jurists could not debate either determination by the district court. *Faretta* requires a defendant "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." 422 U.S. at 835 (internal quotation marks omitted). It does not prescribe a checklist. *United States v. Padilla*, 819 F.2d 952, 959 (10th Cir. 1987). The colloquy is judged by "the total circumstances of the individual case including [the defendant's] background, experience and the conduct of the accused." *Id.* at 958 (internal quotation marks omitted).

As the district court acknowledged, the trial court did not go "charge by charge through the Information and possible sentences." R. I at 410. But the trial court informed Vineyard of the dangers associated with self-representation. It explained Vineyard faced seven charges, R. II at 116; that his minimum sentence given his prior convictions was twenty years, *id.* at 115; and that he was likely facing life imprisonment, *id.* at 101, 115. It warned him he would be held to the same standard as a licensed attorney despite lacking legal training, *id.* at 88, 98; confirmed he was waiving any claim of ineffective assistance of trial counsel, *id.* at 99; told him directly that the court believed

7

he was making a mistake, *id.* at 113; and offered him the opportunity to later withdraw his decision, *id.* at 116–17. Throughout the hearing, Vineyard's responses confirmed his understanding. *See id.* at 98 (stating he would "rather represent myself than have him"); *id.* at 99 ("not going to trial with him"); *id.* at 101 (responding "[n]obody care about my life more than I do, so I'm fine with it" when warned he was "probably go[ing] to prison [for] the rest of [his] life,"). And beyond the colloquy itself, the district court noted Vineyard's "many prior convictions," which confirmed his ability to make that choice with eyes open. R. I at 410; *see Padilla*, 819 F.2d at 958. On this record, the district court's resolution of this claim was not "debatable or wrong." *Slack*, 529 U.S. at 484.

Vineyard's challenge to the district court's procedural-default ruling does not render this issue debatable. The district court concluded that Vineyard's contention he informed the trial court of a communication breakdown and requested substitute counsel was not fairly presented to the state courts and was subject to an anticipatory procedural bar. Vineyard responds there was no default because the statements merely added facts to the same waiver-of-counsel claim he raised on direct appeal. Alternatively, he suggests, appellate counsel's failure to raise the issue constituted cause excusing any default. We need not resolve either contention.

Even assuming the procedural ruling is debatable, Vineyard must still demonstrate that the underlying constitutional claim is also debatable. *Slack*,

8

529 U.S. at 484. He has not done so. As both the state and the district courts observed, the record does not support the premise that Vineyard requested substitute counsel and was denied. Vineyard points to five lines from the hearing transcript, but that passage reflects his dissatisfaction with appointed counsel rather than a request for new counsel. *See* COA Appl. at 14. On this record, Vineyard has not shown that reasonable jurists would debate the district court's conclusion that the OCCA reasonably conducted a *Faretta* inquiry.

## B

Vineyard next contends the trial court violated his Sixth Amendment right to confrontation by declaring Alexander unavailable and admitting her preliminary hearing testimony at trial. The Confrontation Clause permits the use of prior testimony only where the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). A witness may be deemed "unavailable" only if "the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724–25 (1968).

On direct appeal, the OCCA found the State's efforts "more than adequate" to establish Alexander's unavailability. R. I at 253. The district court concluded the OCCA reasonably applied *Crawford* and *Barber*. That decision is not debatable.

9

In his COA application, Vineyard primarily relies on *Holmes v. State*, 501 P.2d 830 (Okla. Crim. App. 1972), to argue the State did not make a good-faith effort to locate Alexander. This argument lacks merit. *Holmes* is a decision of the OCCA. It is not clearly established federal law against which the OCCA's decision is measured. *See* § 2254(d)(1); *Kernan v. Cuero*, 583 U.S. 1, 9 (2017) (per curiam) (stating that "state-court decisions" do "not constitute clearly established Federal law, as determined by the Supreme Court" (internal quotation marks omitted)).

And even assuming *Holmes* correctly states the federal standard, it is inapposite on this record. In *Holmes*, the State issued two subpoenas that were returned "not found" and did nothing more, efforts the OCCA found insufficient to establish due diligence. 501 P.2d at 833. Here, the State went significantly further. At the hearing on the State's motion to declare Alexander unavailable, three witnesses described the State's efforts. An investigator visited two addresses associated with Alexander a total of five times. R. II at 136, 140, 142. He met with her mother, explained the subpoena and the pending cases, and left the subpoena and the prosecutor's contact information. *See id.* at 140–41. Alexander's mother stated she had no working phone number for her daughter, and her own efforts to relay the information were unsuccessful. *See id.* at 146–50. A victim witness coordinator also attempted to reach Alexander by phone approximately five times without success. *See id.* at 155–56.

10

Of course, it is always possible to identify additional steps the State might have taken. "[B]ut the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry . . . ." *Hardy v. Cross*, 565 U.S. 65, 71 (2011) (per curiam). Vineyard has not shown that reasonable jurists would debate the district court's resolution of this claim, and we accordingly deny a COA.

## C

In support of his COA, Vineyard also insists the State's evidence was insufficient to prove beyond a reasonable doubt that he committed assault and battery with a deadly weapon, violating the Fourteenth Amendment's Due Process Clause. In reviewing a sufficiency challenge, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). On habeas review, sufficiency claims face a "high bar" because they are "subject to two layers of judicial deference": deference to the jury's verdict and deference to the state court's assessment of that verdict. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). Accordingly, a federal court may overturn a state-court decision rejecting a sufficiency challenge "only if the state court decision was objectively unreasonable." *Id.* (internal quotation marks omitted).

11

On direct appeal, Vineyard argued the State failed to prove the shooting was willful as required the crime of battery. *See* Okla. Stat. tit. 21, §§ 641, 642; *id.* § 92 (defining willfulness as "a purpose or willingness to commit the act"). As he put it, "the gun went off because Alexander threw something that hit Mr. Vineyard's hand, not because he purposefully pulled the trigger." R. I at 174. The OCCA rejected the claim, holding "[t]he State proved each element of the crime of assault and battery with a deadly weapon beyond a reasonable doubt." *Id.* at 254. The district court agreed, concluding "a rational juror, properly instructed on the law of assault and battery with a deadly weapon, could have found Vineyard guilty, beyond a reasonable doubt," and that Vineyard failed to show "the OCCA applied *Jackson* to the facts of the case in an objectively unreasonable manner." *Id.* at 418.

Vineyard's COA application reasserts the same insufficiency argument that Alexander's testimony describes an accidental discharge. But that is only one possible inference. Viewing the evidence in the light most favorable to the State, we agree with the district court that "[t]he testimony that Vineyard pointed a gun at Alexander and told her she was going to pay coupled with the resulting gunshot wound was sufficient evidence for the jury to conclude Vineyard willfully assaulted and battered Alexander." R. I at 418; *see also Avants v. State*, 660 P.2d 1051, 1052 (Okla. Crim. App. 1983) ("[W]hen assault culminates in a battery, the offense is assault and battery."). On appeal,

12

Vineyard does not raise any distinct arguments that would render the district court's determination debatable, and we find none in our review. This claim also does not warrant a COA.

## D

In his COA application, Vineyard argues the trial court erred by failing to instruct the jury on the lesser offense of pointing a firearm. As the district court recognized, that argument is not cognizable on federal habeas review. We apply "a rule of automatic non-reviewability for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (internal quotation marks omitted). Here, Vineyard was convicted of a non-capital offense; no reasonable jurist could debate the district court's denial of relief on this ground. We deny a COA on this claim.

## E

Vineyard next contends the cumulative effect of the trial errors deprived him of a fair proceeding. But as we have explained, Vineyard has identified no errors to aggregate. In the federal habeas context, cumulative-error analysis "aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 915 (10th Cir. 2019) (internal quotation

marks omitted). The doctrine "does not apply, however, to the cumulative effect of nonerrors." *Id.* Because Vineyard has not established any underlying constitutional error, no reasonable jurist could debate the district court's denial of relief based on cumulative error, and we accordingly deny a COA on this claim.

## F

In Claims 6 through 14, Vineyard contends appellate counsel was ineffective for failing to challenge on direct appeal: (1) the trial court's reading of his prior conviction during voir dire; (2) admission of Y.F.'s preliminary-hearing transcript; (3) admission of Dorshell Fletcher's preliminary-hearing transcript; (4) the State's motion to exclude the victim's affidavits stating she did not wish to proceed with the charges; (5) the State's failure to disclose certain jail and video calls to the jury; (6) the propriety of three jury instructions; (7) denial of his oral motion for substitute counsel; (8) admission of recorded phone conversations from jail he contends were unauthenticated; and (9) a claim of vindictive prosecution for the addition of charges after the preliminary hearing.

An IAAC claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying *Strickland* to ineffective assistance of appellate counsel). To succeed, Vineyard must show that (1) "counsel's representation fell below an objective standard of

14

reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Vineyard raised each claim in his state court application for post-conviction relief. Applying this framework, the state district court dismissed Vineyard's IAAC claims. The OCCA affirmed. Vineyard raised the same issues again in his federal § 2254 petition. Because the OCCA adjudicated these claims on the merits, the district court's review was "doubly deferential," taking a "highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (internal quotation marks and citation omitted). The district court concluded that the OCCA reasonably applied *Strickland* and denied relief.

Rather than address the district court's reasoning in rejecting these claims, Vineyard repeats the underlying contentions of error he presented to the district court and state courts. The district court's thorough order addressed each omitted claim, identified the controlling authority, and explained why the OCCA's rejection of each was not an unreasonable application of *Strickland*. *See* R. I at 423–34. Vineyard's COA application does not identify any argument that would render the district court's determinations debatable. We therefore deny a COA on these claims.

## G

Vineyard's final claim also alleges his appellate representation was ineffective, this time premised on counsel's failure to raise a prosecutorial-misconduct claim on direct appeal. This claim is procedurally barred.

Vineyard first raised prosecutorial misconduct in his state post-conviction application as a freestanding claim, and the state district court held it procedurally barred because "it could have been raised in his direct appeal, but was not." R. I at 306. On appeal to the OCCA, he argued the issue was not barred because it was "filed under ineffective assistance of counsel." *Id.* at 354. The OCCA rejected this argument, finding the IAAC "claim was not included in the post-conviction application presented to the District Court," and was barred by Rule 5.2(A) of the Rules of the Oklahoma Court of Criminal Appeals. R. I at 367; *see* Rule 5.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2026) ("The appeal to this Court . . . constitutes an appeal from the issues raised . . . in the District Court."). The district court held the basis of the OCCA's ruling under Rule 5.2(A) was an independent and adequate state ground barring federal habeas review, and Vineyard had not demonstrated the requisite cause to warrant review. *See* R. I at 435 (citing *Brown v. Allbaugh*, 678 F. App'x 638, 642 (10th Cir. 2017) (unpublished)); *see Duvall v. Reynolds*, 139 F.3d 768, 797 (10th Cir. 1998) (concluding that the state appeals court's application of Rule 5.2(C) was both adequate and

16

independent); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (a claim procedurally defaulted on "an independent and adequate state procedural rule . . . is barred unless the prisoner can demonstrate cause for the default and actual prejudice" or that a "fundamental miscarriage of justice" will result from failure to consider the claim).

Reasonable jurists could not debate the district court's decision. Vineyard's COA application does not challenge that Rule 5.2(A) is an independent and adequate ground barring review. Rather, he maintains the claim is not barred because he raised it as an IAAC claim, and "[i]neffective assistance of appellate counsel cannot be raised on direct appeal." COA Appl. at 59. Maybe so, but Rule 5.2(A) turns on whether the claim was raised in the state district court in his post-conviction proceeding, not direct appeal. And the OCCA determined Vineyard had not done so. Because Vineyard identifies nothing excusing the default, the OCCA's determination is not ours to revisit. *See Coleman*, 501 U.S. at 750. We accordingly deny a COA on this claim.

## IV

We deny Vineyard a COA, grant his motion to proceed in forma pauperis (Doc. No. 6), and dismiss this matter.

Entered for the Court

Richard E.N. Federico
Circuit Judge